Affinity Labs of Texas versus Apple, 2013-1393. Mr. Morton. Thank you, Your Honor. May it please the Court, my name is Cy Morton. I represent Affinity Labs. In 2000, Your Honors, two inventors faced the problem of getting your own digital music to play in your car and came up with two totally different solutions. Mr. Morton, I have a real problem with the record, specifically a lack of information. For example, on pages 27 and 28 of the appellant's opening brief, it says a portable computer is understood by one of skill in the art as not only a computer capable of being moved, as all computers are, but also one that maintains its fundamental character, i.e. a machine that computes when moved, and so on. Going through to, for the same reason I hand-held, DVD players understood by one of ordinary skill in the art as a portable DVD player, while a 5-disc DVD player is not. Those statements lack citation, and I have a number of lack citation questions in here. Where do you find support for those distinctions as they would be understood by a skilled artist? Where in the record? Your Honor, I don't know if I followed all of the things that you pointed out there. Well, I read one reading from your brief. Yes, Your Honor, and I turned to it as quick as I can. Okay, page 27, starting with, so for example, a portable computer, last full paragraph, running through to the top of 28, okay? Yes, Your Honor. Where is the support for that in the record? So, Your Honor, this is exemplary of what a person of skill in the art would understand. Our sites to the record for the basis for portable are all of the examples that are given in the patent. The patent talks about, and I can get those sites out, but a PDA, a cellular telephone, or a portable radio, all of the examples that are actually given in the patent have the characteristics that we're talking about, capable of being easily moved or carried about by a person, and that actually operate. They are a portable audio file player. I don't want to use up too much of your time, so you better answer short. On pages 66 and 67 of the telemetry, okay? At the bottom, beginning with, however, before the board issued its initial decision on appeal, and so on, running through to the products Affinity Labs had accused Apple of infringing, you cite 294 of the joint appendix for that, okay? Yes, Your Honor. Turn to 294 of the appendix and show me where on the page you find support for those assertions. Your Honor, I think the assertion from 294 is that Apple took a license. It says... And what is that contained in on 294? This is a declaration of Harley Frost. It's an affidavit of counsel, right? What's that? It's an affidavit of counsel. This is actually not counsel. This is Harley Frost, one of the principals of Affinity Labs, who participated and negotiated the settlement with Apple. Okay. What supports that? What's your foundation? What have you got there? I have a declaration signed by the president of Affinity Labs that says Apple took a license. It's undisputed that Apple took a license, undisputed that there was litigation, really undisputed that Apple infringes. Mr. Frost is an attorney. He should know how to do a foundation. There's no foundation for any of this. I see that you wanted more explanation of what I just said. I want something that's cognizable by a court. Does that seem unreasonable? That's a rhetorical question. Let me turn you to page 69 of the brief. Page is over. You conclude, in the face of this evidence, Apple took a license to the 926 patent and declined to participate further in the re-examination of that patent. You cite to 251, and it goes on a little bit, of the joint appendix. And again, where on 251 do you find cognizable support? That Apple took a license, Your Honor? Affinity implies that this follows from its observation stated on page 67 that Apple also agreed that it would no longer participate in the re-examination of the 926 patent or Affinity Lab's appeal of that re-examination. And on that, you cite to page 251. Yes, Your Honor. Where does it say that on 251? Does my note say it doesn't say that? I'm not sure I understood the question. This does show that third-party requester Apple gives notice that the parties to the proceeding have reached an agreement and requester will no longer participate in the present re-examination. Mr. Morton, when I look at Claim 1, I see a bunch of claim limitations, all of which, and I recognize this is back to 2000, all of which seem to be in the prior art. Whether it's name, I don't know whether it's name, or nine, or loud. Why wasn't the court reasonably correct in finding the claimed subject matter to be obvious? Yes, Your Honor. First, the primary reference, loud, is missing a lot of the elements in this claim. But how about name? Is it name or nine? I've been saying name. I haven't met Mr. Name or nine, so I'm not sure. A reference by any other name is the same. Very well. So that reference, Your Honor, is simply a standard MP3 player. The goal of that was to actually add some additional memory to that MP3 player. There's nothing in that reference that has anything to do with connecting to a second device as claimed here. Well, maybe not, but I think what Judge Lurie is asking, weren't all limitations here disclosed in a combination of loud and name? Well, I don't think you can just set name down next to loud and say all the elements are there. The idea was to add the display of name to loud. And if you did that, you would still not have any portable audio file player because loud is mounted in the trunk or mounted in the dashboard. Well, that's one. That's not the only one. That's not the only one, Your Honor. That's not the only example of how they do it. Mounting it in the trunk is just one example. Or in the dashboard is the other example. Either way, it's mounted in. Either way, the only thing that's movable is the disc cartridge in loud, which is not a portable audio file player. So if you want to discuss the comment, sorry, Your Honor. Even if Patnoff was incorrect, that the disclosure of something in the trunk of a car is portable, there is disclosure in name. And there's an external communications device. And the only thing that's missing is a display, right, in name? In name, all that's been relied upon from name is the display. Name could probably get music downloaded from a computer into the name portable MP3 player. And that's the first part of the claimed invention. But there's nothing in name about being able to connect name to a second electronic device. Well, that's the idea of combining the two. I mean, that's sort of standard obviousness analysis, combining the two and taking features from one, like the display and the portability, and using it with the other. And the question is, why was the board mistaken? And that's their alternative. Right. So I don't think, even if you combine it, that all the elements are there. But there's also absolutely no teaching suggestion, motivation, even a flexible teaching. What's missing if you combine them? Well, the way the combination's been proposed, you still don't have a portable audio file player if you just slap the display of name onto the music server of loud, because it's a mounted solution. How about adding loud to name? I mean, we've got the references. Sure. I hate you sort of nitpicking what the patent office did. Right. But we have the references, right? You do have the references. Then what's missing is a description of having one display that has selectable icons on it, so you can play your music wherever you want with that portable audio file player. And that communicates data to a second device with a second display to present a representation of those selectable icons on the second display. The audio file player is disclosed in name, right? And forwarding to another device is disclosed in loud. So you put the two of them together and you've got the invention, right? Well, if we want to go down that path, I think there's no teaching suggestion motivation here. There's no reason anyone would add the display of name to loud music server, whether it was mounted in the trunk or mounted on the dashboard. There's absolutely no reason to put a display in the trunk and no reason to put two displays on the dashboard. So that combination just doesn't make any sense. You're saying loud is limited to trunk or dashboard and neither is portable. That's correct, Your Honor. That's correct. Why isn't there a motivation to make it portable? Well, there's certainly nothing stated in loud and nothing stated in name. If we want to go beyond that... Are you clear that the suggestion motivation doesn't have to be... Yes, Your Honor. ...solved in the prior art? It can be in the nature of the problem to be solved. So these two inventors, as I started, looked at this problem of getting your music downloaded and into your car and came up with two completely different solutions. What loud said, as far as a portable audio file player, was that it doesn't have enough storage, there's no place to put it in the cab, the only solution is to connect it to a cassette tape player, and that you can't communicate with back and forth, so it's dangerous because the controls are on the portable player. That's the evidence... But it's loud and neat. Yes, Your Honor. Between the view of loud and neat. Name doesn't say anything about those issues, about using name in a vehicle to connect to the vehicle. The only actual evidence in the record of what a person of skill in the art bought as of 2000 is loud himself discouraging any reader of loud from using a portable audio file player to do his solution in the car. He said that it would be, as I said, not enough memory. He said nowhere to put it. He said the only thing that he could imagine that you would use it for is this cassette tape embodiment that he has in column two of his patent. So he's basically said we're not going to... Someone reading this should not try to use something like name, an MP3 player, for my car solution. So it's actual teaching away within the patent. Do you want to save some rebuttal time? I do, Your Honor. Thank you. All right. Mr. Wagenfeld. Thank you, Judge Lurie, and may it please the Court. This case involves a relatively simple system involving three components. First, there's a personal computer. You're talking about as of 2000, right? Yes, Your Honor. Right. Not today's knowledge of today. That's correct, Your Honor. Does the patent office case depend on the portability of the device in the trunk of the car? No, Your Honor, it does not. Although the decision was correct that the device in the trunk is portable, Lau, in fact, makes clear that its device can be connected to multiple head units. The way it would connect to multiple head units would be for it to be removed from the trunk and carried to another vehicle, inserted perhaps into that vehicle's trunk, perhaps inserted into that vehicle's head unit. Lau also discloses that its device can have data loaded into it directly, into its RAM directly from a personal computer. The only way for that to happen is for the device to be removed from the car and taken to the personal computer to have data loaded in. So it is portable. But even if it were not portable, Name discloses that characteristic very clearly. It discloses a device with a display and an updatable user interface that is readily portable even under Affinity's construction of the term. I'll turn next to the teaching away argument. Lau does not teach away from using a device like Name's in connection with its system. Lau's invention was of a system that permits someone to control an external device, whether it be in the trunk or the head unit, or it could be somewhere else in the car. Lau's not limiting in that sense. It allows a person to use the head unit controls to control a device in the car. Now, Lau... Doesn't Lau say that using a portable solid state music player is not satisfactory? That's not a teaching away? That's not a teaching away for several reasons. First of all, Name is not a portable solid state MP3 player. It has a hard drive, so it's not a solid state device. Second of all, it teaches away from... It does not teach that the system will not work. It just teaches that it's a dangerous use of the system with the given MP3 players that Lau was specifically referring to. As Mr. Morton pointed out, Name is not solid state and it actually can contain a lot more memory. And one of the concerns that Lau had about the existing MP3 players with which he was aware was that they didn't have enough memory. Now, Name solved that problem. Not being satisfactory, as you say, doesn't say that it doesn't work. But when we're talking about motivations of combined references, isn't that relevant? It is relevant, Your Honor, but it's relevance for whether something can be combined as a technical matter, not whether or not a particular individual thinks this is a good idea or a bad idea. For example, Lau is also concerned about it being dangerous for the driver to operate the device. That doesn't mean that the device could not be operated by someone else in the vehicle or while the car is parked. I don't think, for example, that an admonition that it is not a good idea to text while driving is a teaching away of the capability of texting while driving. It doesn't take away that technical capability. That technical capability still exists, even if someone suggests that it's a bad idea. If there are no further questions, I'll yield the remainder of my time. Thank you. Mr. Morton has some rebuttals on. Thank you, Your Honor. On the issue of portability, I wanted to address that quickly. There was a suggestion that the music server could be unmounted from Lau and taken somewhere else. That still doesn't change the fact that once you do that, once you remove it from the car, it has no power, it has no display, it has no speakers or headphones. It has no ability to play music and, therefore, is not an audiophile player. It has to be plugged in, mounted into the car to be that. The other thing that I wanted to point out is to address the record directly on this whole issue of secondary considerations. I do think it is important to understand here that Lau proposed obviously this car-mounted solution and Russell White proposed a very different solution. And we have put in evidence, and it is in the record at A198, that as of 2010, 90% of vehicles have what Russell White proposed in his patent. They have the ability to connect to an iPod, to a portable electronic device. And nobody has followed what Lau has done. There certainly is no evidence that anyone has done what Lau has done. Russell White's proposal in 2000, before there even was an iPod, turned out to be the correct solution here. And Lau's did not. And so with that, I think the board did clearly err, Your Honor, for at least three reasons. One is the construction of portable, where Lau knows what portable is, uses it in his patent. The 926 patent uses portable, understands what that is. So saying that something is portable because, as the board said, the car carries and moves about passengers, therefore it moves about the music server in the trunk, it is clear error. And it shows a decision maker that in this case was just looking to find any reason at all to invalidate this patent. So what we have here is a situation where someone who proposed the correct solution is being challenged by a patent filed 20 days earlier where someone proposed the wrong solution. And the decision maker in a case like this where obviousness is a question of law has a lot of power to do what is right. And invalidating the correct solution by the wrong solution proposed 20 days earlier is just not right, Your Honors. I thank you for your time. Weren't there other rejections that the Patent Office made that ultimately it didn't rely on? In other words, if we agree with you, you're not home free, are you? I would love to be home free, Your Honor. The record is that there were additional rejections by the examiner. The board took up two of them, had to drop one of them because it was not actually prior art, and so they were down to their best one left, which was this. So in my view, this was the best rejection that was there and that's what the board went with. I'd ask for reversal, but it is true that the examiner had other rejections. Thank you, Mr. Horton. You may take the case, sir.